Filed 4/29/19

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C086550 |
| Plaintiff and Respondent, | (Super. Ct. No. CM043563) |
| v. | |
| ACCREDITED SURETY & CASUALTY COMPANY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Butte County, Michael R. Deems, Judge.  Affirmed.

Law Office of John Rorabaugh, John Mark Rorabaugh, and Crystal L. Rorabaugh, Retained Counsel for Defendant and Appellant.

Bruce Alpert, County Counsel, Bradley J. Stephens, Assistant County Counsel, for the Plaintiff and Respondent.

Appellant Accredited Surety & Casualty Company (Accredited) appeals from an order denying a motion to vacate forfeiture, exonerate bail, and set aside the summary judgment.  Accredited contends:  (1) the bail was set unconstitutionally, in violation of

defendant Michael Manning's (Manning) due process rights; (2) the bonds are void as they exceed the authority of the power of attorney; and (3) the bond was exonerated by operation of law when the trial court released Manning on his own recognizance with conditions.  We find Accredited waived any challenge to defects in the proceedings preliminary to the taking of bail, including setting bail, when it assumed its obligations at the time of the execution of the bond.  Further, the record does not support Accredited's argument that the bond exceeded the authority of the power of attorney, and the trial court did not release Manning on his own recognizance, as the notation to that effect is a clerical error.  Accordingly, we affirm the judgment.

## I.  BACKGROUND

On September 4, 2015, the People filed a felony complaint charging Manning with seven counts of sex offenses against a child under the age of 14 and one count of possession of child pornography.  The complaint also requested bail be set at $215,000.  At a hearing that same day, with defendant present and represented by counsel, the court set bail at $215,000.  Accredited, through its agent McMains Bail Bonds (McMains), posted bond number AH-00797626 in the amount of $215,000.[1]

The People filed an amended complaint on September 9, 2015, adding a second count of possession of child pornography, three counts of using a minor for sex acts, and one count of sexual exploitation of a child.  This complaint requested bail be set at $290,000.  At a hearing on September 10, 2015, with defendant present and represented by counsel and a representative of McMains present, the trial court set bail at $290,000, and Manning was remanded to custody.  Accredited, through its agent McMains Bail Bonds, posted bond number AJ-00793917 in the amount of $290,000, and Manning was released from custody.  The bond indicates it is void if written for an amount greater than

---

[1] The record on appeal does not contain the actual bond, but rather the certificate of discharge.

the attached power of attorney. There is no power of attorney attached. There was no discussion of the $215,000 bond on that day or at any subsequent hearings.

On June 30, 2016, defendant pleaded no contest to one count of committing a lewd act upon a child, two counts of using a minor for sex acts, and one count of possession of child pornography. The trial court dismissed the remaining counts with a *Harvey*[2] waiver. At the end of the plea hearing, the People indicated they were "not opposed to Mr. Manning remaining at liberty subject to the previous terms and conditions ordered by the court." The trial court stated, "And that [is] the court's order." The clerk's minutes from that hearing indicate defendant was released on two bail bonds. Also, there is a box checked on the minute order indicating Manning was released on his own recognizance. At the next hearing, on August 4, 2016, the clerk's minutes again reflect Manning was released on bail with two bonds, one for $215,000 and one for $290,000.

Defendant did not appear for the October 6, 2016, sentencing hearing. The clerk indicated Manning had been "out on bail," and the trial court ordered bail forfeited. The clerk sent notice of forfeiture of the $290,000 bond on October 14, 2016. On October 25, 2016, the trial court exonerated the $215,000 bond without costs.

In May 2017, the trial court granted McMains's motion to extend time pursuant to Penal Code section 1305.4.[3] In November 2017, Accredited moved to vacate the forfeiture and exonerate the bond. Accredited argued the bond was exonerated when the trial court released defendant on his own recognizance. In supplemental briefing, Accredited argued the bond was exonerated when the trial court increased the bail amount to $290,000 but released defendant on the $215,000 bond, and the two bonds combined were void as they exceeded the limitation of their power of attorney. After

---

[2] *People v. Harvey* (1979) 25 Cal.3d 754.

[3] Undesignated statutory references are to the Penal Code.

ordering the transcript of the June 30, 2016, hearing, the trial court denied Accredited's motion. The trial court entered summary judgment for $290,000 on January 29, 2018.

## II. DISCUSSION

*A.    The Bail Setting Process*

Accredited contends the summary judgment should be set aside, forfeiture vacated, and bond exonerated because bail was set unconstitutionally. Accredited relies on *In re Humphrey* (2018) 19 Cal.App.5th 1006, review granted May 23, 2018, S247278 (*Humphrey*) to argue the trial court violated Manning's constitutional rights to due process by failing to consider his ability to pay before setting the bail amount. Accredited asserts that because the process used to set bail did not satisfy constitutional requirements, it follows that the underlying bail bond contract is itself unconstitutional and void. County counsel contends Accredited does not have standing to raise Manning's constitutional rights, and the issue is forfeited by failure to object in the trial court.

*1.    Standing*

We agree Accredited would lack standing to assert a violation of Manning's constitutional rights at the bail setting hearing. Accredited, however, is not appealing the order setting bond. In this case, Accredited is arguing that *as a consequence* of the potential violation of Manning's constitutional rights, the bond contract, to which Accredited is a named party, is invalid. "At its core, standing concerns a specific party's interest in the outcome of a lawsuit. [Citations.] We therefore require a party to show that he or she is sufficiently interested as a prerequisite to deciding, on the merits," the claims presented by the litigation. (*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1247.) As a party to the bond contract, Accredited has standing to raise claims involving its validity. (See *People v. v. Jenkins* (2000) 22 Cal.4th 900, 965-966; *People v. Badgett* (1995) 10 Cal.4th 330, 353.) Accredited has standing because its claim is

4

based on a theory that the constitutional violation rendered the contract itself void. (See *Badgett, supra,* at p. 353.)

### 2. *Forfeiture*

We are not persuaded Accredited forfeited objection to the procedural defects it now asserts by failing to raise them in the trial court. The requirement the trial court make bail determinations based on individualized considerations about the defendant, including the defendant's ability to pay, was first outlined in the *Humphrey* decision. *Humphrey* was decided three years after the bail setting hearing in this case. The hearing setting defendant's bail satisfied the procedural requirements in place at the time of the hearing. There was no reason for Accredited to object at the hearing and Accredited did not forfeit the right to appeal the procedure based on subsequent changes in the law. (See *People v. Rangel* (2016) 62 Cal.4th 1192, 1215-1216 [failure to object is excused when counsel could not have anticipated changes in the law].)

### 3. *The Bail Setting Process*

This leaves us to determine if the procedural defects setting defendant's bail, as defined by *Humphrey*, void the bail bond contract itself. While *Humphrey* is pending in the California Supreme Court, we will also assume that setting bail without the individualized consideration of Manning's circumstances violated Manning's constitutional rights. We conclude that violation does not void the underlying bail bond.

In *Humphrey,* the defendant Keith Humphrey was detained prior to trial due to his financial inability to post bail. Humphrey challenged the procedures utilized by the trial court in setting bail, arguing that the failure to consider his ability to pay or less restrictive nonmonetary alternatives to bail violated his due process rights. (*Humphrey, supra*, 19 Cal.App.5th at pp. 1015-1016, rev.gr.) The Department of Justice agreed that Humphrey was entitled to a new hearing that would consider the defendant's ability to pay. (*Id.* at p. 1016.) The First District Court of Appeal held that pretrial detention determinations must be based on factors related to the individual defendant's

5

circumstance, including the defendant's ability to pay, to ensure that a defendant "not be imprisoned solely due to poverty and that rigorous procedural safeguards are necessary to assure the accuracy of determinations that an arrestee is dangerous and that detention is required due to the absence of less restrictive alternatives sufficient to protect the public." (*Id.* at p. 1041.)  Accordingly, the court reversed the bail setting determination and remanded for a new hearing, at which time Humphrey would have "the opportunity to provide evidence and argument, and the court [would] consider[] his financial resources and other relevant circumstances, as well as alternatives to money bail.  If the court determine[d] that [Humphrey] [wa]s unable to afford the amount of money bail it f[ound] necessary to ensure [Humphrey]'s future court appearances, it [could] set bail at that amount only upon a determination by clear and convincing evidence that no less restrictive alternative w[ould] satisfy that purpose.  The court's findings and reasons must be stated on the record or otherwise preserved." (*Id.* at p. 1048.)

Humphrey did not discuss the validity of a bail bond contract issued following a constitutionally inadequate hearing.  *Humphrey* was concerned with how bail setting procedures can prevent a defendant from being able to make bail.  The rights addressed in *Humphrey*, and the procedural requirements announced by the court, are intended to guard defendants' liberty interests. (*Humphrey, supra,* 19 Cal.App.5th at pp. 1037, 1040, 1042, rev.gr.)  Nothing in *Humphrey* or the statutory rules regarding the setting of bail relieves the surety of its obligations under the bond once it has been executed.

Accredited argues the bond should not be forfeited because the procedures used to set the bail amount were defective.  Similar arguments regarding defects in the bail-setting procedures have been rejected.  "Defects and irregularities, if any, in the proceedings preliminary to the taking of bail are considered as waived by the surety when it assumes its obligations as such at the time of the execution of the bond." (*Western Surety Co. v. Municipal Court of City of Los Angeles* (1937) 20 Cal.App.2d 442, 443-444; *County of Los Angeles v. Surety Ins. Co*. (1985) 164 Cal.App.3d 1221, 1225 (*County*

6

*of Los Angeles*).) We find the analysis in these cases persuasive. Accredited waived any procedural irregularities in the bail setting hearing when it "assume[d] its obligations . . . at the time of the execution of the bond." (*Western Surety Co. v. Municipal Court of City of Los Angeles, supra*, at p. 444; *County of Los Angeles, supra*, at p. 1225.)

Moreover, noncompliance with the procedural requirements for setting bail "have no legal effect on the forfeiture of bail upon defendant's failure to appear for sentencing." (*People v. Accredited Surety & Casualty Co., Inc.* (2004) 125 Cal.App.4th 1, 4 [noncompliance with section 1275 is not a defense to forfeiture of a bond or ground for exoneration].) The statutory procedural requirements for setting bail set forth in sections 1269a, 1269b, 1269c, 1270.1, and 1275 do not "address the validity of the bond but rather the procedure for the release of a defendant from custody upon bail." (*County of Los Angeles, supra*, 164 Cal.App.3d at p. 1225.) The procedural requirements contained in these sections were not intended to protect the surety on the bail bond. In contrast, the procedural requirements set forth in sections 1305 and 1306, dealing with the procedural requirements for forfeiture and exoneration of the bond, do protect the surety. (See, e.g., *County of Orange v. Lexington Nat. Ins. Corp.* (2006) 140 Cal.App.4th 1488, and *People v. American Contractors Indemnity Co.* (2001) 91 Cal.App.4th 799.) Failure to comply with the procedural requirements of setting bail is not among the statutory grounds for exoneration of the bail bond. (§§ 980, subd. (b), 1000.2, subd. (b), 1116, 1188, 1296, 1305, subds. (b), (c) & (d), 1371, & 1384.) Failure to comply with the procedural requirements of *Humphrey*, requirements intended to safeguard the defendant's constitutional rights, did not render the subsequently issued bond void.

B.     *Excess of Authority*

Accredited argues the bonds are void because they exceeded the power of attorney authorized for the bonds. Accredited claims both bonds limited the scope of liability by including the language, " 'This power is void if altered or erased, if used with other powers of this company or in combination with power from any other surety company, or

7

if used to furnish bail in excess of the stated face amount of this power.' The power of attorney is limited to $500,000."

The record on appeal does not contain the bond AH-00797626 issued for $215,000. It contains only the discharge of that bond. That discharge contains no language regarding power of attorney. The discharge, however, does indicate a "power limit" of $250,000.

The record on appeal contains the bond AJ-00793917 issued for $290,000. This bond also does not contain the power of attorney language Accredited quotes. The only reference it makes to a power of attorney is, "This bond is void if written for an amount greater than the power of attorney attached hereto, or if more than one such power is attached, or if written after the expiration date specified on the attached power of attorney." There is no power of attorney attached to the bond.

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.] 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations] 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. . . .' [Citation.] ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' [Citation.] 'Consequently, [the appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) Accredited's argument that the bonds exceeded the powers of attorney fails because of the lack of factual support in the record. (See *Lima v. Vouis* (2009) 174 Cal.App.4th 242, 262.)

*C.*     *Whether the Bond was Exonerated*

Accredited's final contention is the bond was exonerated when the trial court released Manning on his own recognizance. The trial court minutes have a checked box indicating that Manning was released on his own recognizance. The trial court, however, found the minutes to be in error when it ruled on Accredited's motion to vacate the forfeiture and exonerate the bond. Accredited argues the trial court erred in finding that the minutes were mistaken, and erred in failing to "follow the presumption that [the] court's minutes are presumed correct."

Generally, when the record is in conflict, "it will be harmonized if possible; but where this is not possible that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to greater credence [citation]. Therefore[,] whether the recitals in the clerk's minutes should prevail as against contrary statements in the reporter's transcript, must depend upon the circumstances of each particular case." (*In re Evans* (1945) 70 Cal.App.2d 213, 216, quoted with approval in *People v. Smith* (1983) 33 Cal.3d 596, 599.) It is clear the box checked on the minute order indicating Manning was released on his own recognizance was a clerical error. The trial court did not state Manning was released on his own recognizance, but rather indicated he was released subject to the previous terms and conditions. That previous release was on bail. At the subsequent hearing, the clerk's minutes reflect that Manning was released on bail, and at the sentencing hearing when Manning did not appear, the clerk again stated Manning was out on bail. On this record, we conclude the reporter's transcript controls.

While it is true that the law disfavors forfeitures, including forfeitures of bail under the bail provisions of the Penal Code, it is the burden of the surety to show that a forfeiture of its bail should be set aside. (*People v. American Surety Ins. Co*. (1999) 75 Cal.App.4th 719, 725.) Accredited has not made that showing. Accordingly, we affirm the order denying the motion to vacate the summary judgment.

9

## III.  DISPOSITION

The judgment is affirmed.


/S/

_____

RENNER, J.


We concur:


/S/

_____

HULL, Acting P. J.


/S/

_____

ROBIE, J.