Filed 11/18/20  P. v. United States Fire Ins. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>UNITED STATES FIRE INSURANCE,<br><br>    Defendant and Appellant. | B292975<br><br>(Los Angeles County<br>Super. Ct. No. SJ3947) |

        APPEAL from an order of the Superior Court of Los Angeles County, Christopher K. Lui, Judge.  Affirmed.

        Law Office of John Rorabaugh, John Mark Rorabaugh and Crystal L. Rorabaugh for Defendant and Appellant.

        Mary C. Wickham, County Counsel, Adrian G. Gragas, Assistant County Counsel, for Plaintiff and Respondent.

———————————————

United States Fire Insurance (US Fire) appeals the superior court's order denying its motion to set aside summary judgment, discharge forfeiture and exonerate the bond forfeited when the criminal defendant for whom it had been posted failed to appear in court as required. US Fire argues on appeal, as it did in its motion to set aside, that setting bail in the amount of $100,000 was unconstitutional, making the forfeiture provision in the bail contract void and unenforceable. An identical argument was rejected earlier this year by our colleagues in Division Two of this court in *People v. The North River Ins. Co.* (2020) 48 Cal.App.5th 226 (*North River*) and a year earlier by a panel of the Third District in *People v. Accredited Surety & Casualty Co.* (2019) 34 Cal.App.5th 891 (*Accredited*). We agree with the reasoning of those two cases and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Nuvia A. Yousef Bail Bond, as agent for US Fire, posted a $100,000 bail bond on October 9, 2013 to secure the release of Mario Carreno from custody. Carreno's bail had been set at $100,000 on October 1, 2013 during a hearing on a bench warrant issued when Carreno had failed to appear for trial the preceding August. Carreno's counsel did not object to the amount of bail, but the record does not reflect any inquiry was made into Carreno's ability to pay or the existence of conditions that might secure his appearance in court without bail. The court scheduled a pretrial hearing for October 28, 2013.

1. *The First Motion To Set Aside*

Carreno failed to appear at the pretrial hearing on October 28, 2013. The trial court issued a bench warrant and ordered the bond forfeited. The clerk mailed a notice of forfeiture on October 30, 2013. On July 2, 2014 the court entered summary

2

judgment against US Fire in the amount of the bond plus court costs on the grounds the bond had been ordered forfeited and the time for filing a motion to set aside the forfeiture had elapsed. The clerk sent US Fire notice of entry of judgment and a demand for payment.

US Fire moved to set aside the summary judgment, discharge the forfeiture and exonerate bail on August 18, 2014, arguing the court lacked jurisdiction to enter summary judgment because Carreno had not been ordered to appear at the October 28, 2013 pretrial hearing. The County opposed the motion.

The trial court agreed with US Fire, explaining the bail bond was "more of a contractual relationship in terms of [Carreno] having to come [to court], as opposed to a court order and [there] was no court order in this case." It granted the motion to set aside summary judgment, vacated the bail forfeiture and ordered the bail exonerated.

We reversed the order granting the motion to set aside based on the Supreme Court's then-recent decision in *People v. Safety National Casualty Corp.* (2016) 62 Cal.4th 703 (*Safety National*), which analyzed the statutes requiring a defendant's presence in court in felony cases (Pen. Code, § 977, subd. (b))[1] and forfeiture of bail upon a defendant's nonappearance (§ 1305) and held, "for purposes of section 1305, a defendant's presence at an 'other proceeding[ ]' under section 977(b)(1) constitutes a 'lawfully required' appearance for which his or her unexcused absence may justify the forfeiture of bail." (*Safety National*, at p. 716.) Applying *Safety National* we explained, "Carreno failed to appear

_____

[1]     Statutory references are to this code unless otherwise stated.

3

at the October 28, 2013 pretrial hearing; there is nothing in the record to indicate that he executed a written waiver of his right to be present; and he provided no sufficient excuse for his absence.  Further, he had actual notice of the October 28 hearing, as he was physically present in court when that pretrial hearing was set.  The court hearing his case therefore had a basis and jurisdiction to declare a bail forfeiture." (*County of Los Angeles v. United States Fire Ins. Co.* (Jan. 13, 2017, B260173 [nonpub. opn.].)

2. *The Second Motion To Set Aside*

Following issuance of the remittitur the trial court entered summary judgment in favor of the County.  US Fire moved a second time to set aside summary judgment, discharge forfeiture and exonerate bond, arguing, based on the court of appeal's decision in *In re Humphrey* (2018) 19 Cal.App.5th 1006, review granted May 23, 2018, S247278, that the order setting Carreno's bail at $100,000 was unconstitutional and, therefore, its bail contract was unenforceable.  The court denied the motion, and US Fire filed a timely notice of appeal.

**DISCUSSION**

1.  In re Humphrey

In January 2018, more than four years after the court set Carreno's bail at $100,000, our colleagues in the First District in *In re Humphrey*, *supra*, 19 Cal.App.5th 1006, considered the petition for writ of habeas corpus filed by an individual detained prior to trial due to his financial inability to post bail of $350,000. Asserting bail had been set by the trial court without inquiry or findings concerning either his financial resources or the availability of a less restrictive nonmonetary alternative condition or combination of conditions of release, the petitioner

4

argued his continued detention violated rights guaranteed by the Fourteenth Amendment. (*Id.* at p. 1015.)

The *Humphrey* court agreed, relying on one line of case authority holding a defendant may not be imprisoned as a result of his or her financial inability to pay a fine or restitution and a second establishing the right to bail cannot be abridged except through a judicial process that safeguards the due process rights of the presumptively innocent arrestee and results in a finding that no less restrictive combination of conditions can adequately assure the arrestee's appearance in court and/or protect public safety. (*In re Humphrey, supra,* 19 Cal.App.5th at pp. 1025-1026.) "[T]he principles underlying these cases," the court of appeal held, "dictate that a court may not order pretrial detention unless it finds either that the defendant has the financial ability but failed to pay the amount of bail the court finds reasonably necessary to ensure his or her appearance at future court proceedings; or that the defendant is unable to pay that amount and no less restrictive conditions of release would be sufficient to reasonably assure such appearance; or that no less restrictive nonfinancial conditions of release would be sufficient to protect the victim and the community." (*Id.* at p. 1026.) A court setting a bail amount, the *Humphrey* court continued, must "consider [a] defendant's ability to pay and refrain from setting an amount so beyond the defendant's means as to result in detention." (*Id.* at p. 1037.)[2]

_____

[2] In granting review on May 23, 2018, the Supreme Court directed the parties in *In re Humphrey* to brief and argue the following issues: "(1) Did the Court of Appeal err in holding that principles of constitutional due process and equal protection require consideration of a criminal defendant's ability to pay in

2. North River *and* Accredited

In *North River*, *supra*, 48 Cal.App.5th 226, decided during the pendency of US Fire's appeal, Division Two of this court rejected the surety's argument summary judgment on a forfeited bail bond should be set aside because of the trial court's failure, several years before the decision in *In re Humphrey*, to inquire into the defendant's ability to pay when setting bail rendered the bond (and, therefore, the summary judgment) void. (*Id.* at p. 230.)

The court gave several reasons for its decision, including the untimely filing of the motion; but for our purposes most significant are the court's holding the judgment was not void and its conclusion that, even if voidable, the bail order was voidable only as to the defendant, not North River. The court explained, "A judgment is 'void' only when the court entering that judgment 'lack[ed] jurisdiction in a fundamental sense' due to the "'entire

---

setting or reviewing the amount of monetary bail? (2) In setting the amount of monetary bail, may a trial court consider public and victim safety? Must it do so? (3) Under what circumstances does the California Constitution permit bail to be denied in noncapital cases? Included is the question of what constitutional provision governs the denial of bail in noncapital cases—article I, section 12, subdivisions (b) and (c), or article I, section 28, subdivision (f)(3), of the California Constitution—or, in the alternative, whether these provisions may be reconciled."

On August 26, 2020 the Supreme Court, pursuant to California Rules of Court rule 8.1115(e)(3), ordered that part III of the court of appeal's decision—the court's holding that bail determinations must be based upon consideration of individualized criteria—continues to have precedential effect. (*In re Humphrey*, S247278, 2020 Cal. Lexis 5543.)

6

absence of power to hear or determine the case'" resulting from the "'absence of authority over the subject matter or the parties.'"'" "'. . . A court can lack fundamental authority over the subject matter, question presented, or party, making its judgment void, or it can merely act in excess of its jurisdiction or defined power, rendering the judgment voidable.' [Citation.] Only void judgments and orders may be set aside under section 473, subdivision (d); voidable judgments and orders may not." (*North River*, *supra*, 48 Cal.App.5th at pp. 233-234.)

Applying these definitions the *North River* court held the trial court's summary judgment on the bond was not void "because the trial court at all times had fundamental jurisdiction over the subject matter and the parties. The court had the jurisdiction over the subject matter when it followed the statutory procedures then in effect when setting the bail amount for defendant [citations], releasing defendant on bail once the surety posted a bond in the bail amount [citations], declaring the bond forfeited in open court when defendant did not appear as ordered and had no sufficient excuse for his nonappearance [citation], and entering summary judgment once defendant was not returned to custody by the expiration of the appearance period [citation]. [Citation.] The court also had jurisdiction over the surety once the surety posted its bond." (*North River*, *supra*, 48 Cal.App.5th at pp. 233-234.)

Continuing, the *North River* court held, "[A]ny noncompliance with *Humphrey* would, at best, render the bail order voidable *as to the defendant, not as to the surety*." (*North River*, *supra*, 48 Cal.App.5th at p. 235.) The bail forfeiture proceedings arose from the contract between the surety and the People under which the surety acts as the guarantor of the

7

defendant's appearance in court.  That contract, the court explained, while related to the underlying criminal prosecution of the defendant, is independent of, and collateral to, the criminal case.  (*Id*. at p. 235, citing *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657.)  "The independence of bail proceedings from the underlying criminal prosecution is why any noncompliance with *Humphrey* during the prosecution does not affect—let alone eviscerate—the trial court's jurisdiction over the collateral bail proceedings.  Time and again, courts have ruled that errors in a trial court's setting of bail during the criminal prosecution do not let the surety off the hook in the collateral bail proceedings." (*North River*, at p. 235; see *People v. Financial Casualty & Surety, Inc.* (2019) 39 Cal.App.5th 1213, 1217, 1225-1227 [assuming the trial court violated the defendant's constitutional rights by conditioning bail on the defendant waiving his Fourth Amendment rights against warrantless searches, the violation did not "vitiate the surety's obligation to comply with the terms of the undertaking"]; *People v. Accredited Surety & Casualty Co., Inc.* (2004) 125 Cal.App.4th 1, 4, 6-8 [trial court's failure to comply with section 1275 when setting bail did "not operate to exonerate a surety's liability" on the bond].)

    *Accredited*, *supra*, 34 Cal.App.5th 891 reached a similar conclusion the year before *North River*.  In *Accredited* a panel of the Third District first noted that "*Humphrey* did not discuss the validity of a bail bond contract issued following a constitutionally inadequate hearing." (*Id*. at p. 898.)  The court then explained, "The rights addressed in *Humphrey*, and the procedural requirements announced by the court, are intended to guard defendants' liberty interests.  [Citation.]  Nothing in *Humphrey*

8

or the statutory rules regarding the setting of bail relieves the surety of its obligations under the bond once it has been executed." (*Id.* at p. 898.) Citing the same case law relied upon by *North River*, the court held, "Failure to comply with the procedural requirements of *Humphrey*, requirements intended to safeguard the defendant's constitutional rights, did not render the subsequently issued bond void." (*Id.* p. 899.)

### 3. *US Fire's 2013 Bail Contract Was Not Unenforceable*

Without addressing essential questions concerning the constitutionality of the bail setting order in this case—that is, whether the Supreme Court will ultimately agree with the court of appeal's result in *In re Humphrey* and hold, either as a matter of federal or state constitutional law, that bail determinations must be based upon consideration of individualized criteria including the defendant's financial status; if it does, whether the ruling will apply retroactively to bail orders made, as here, years before the First District's decision; and whether, even assuming the constitutional analysis of *In re Humphrey* were to apply to the bail order in this case, any error would be harmless because Carreno, unlike Humphrey, was able to post bail and was not subject to prolonged pretrial detention—US Fire urges us to disregard *North River*'s and *Accredited's* analysis and conclude the bail order in this case was void and, as a consequence, its surety contract unenforceable.

Central to US Fire's argument is its contention that the courts in *North River* and *Accredited* "fundamentally misconstrue the nature of the bail contract." Rather than a straightforward contract between the state and the bonding company, US Fire asserts, "[t]he contract is instead one of suretyship, and the rules of surety law apply." Under that law, US Fire continues, the

liability of a surety is generally commensurate with that of the principal; where the principal is not liable on the obligation, neither is the guarantor. (See Civ. Code, § 2810 ["[a] surety is liable, notwithstanding any mere personal disability of the principal, though the disability be such as to make the contract void against the principal; but he is not liable if for any other reason there is no liability upon the part of the principal at the time of the execution of the contract, or the liability of the principal thereafter ceases, unless the surety has assumed liability with knowledge of the existence of the defense"].) Accordingly, it argues, neither the defendant nor the surety that guaranteed the defendant's contract with the state is liable for a bail debt that was not fixed by a valid method.

US Fire ignores that the holding in *North River* is founded on the Supreme Court's analysis of bail proceedings as "independent from and collateral to" the underlying criminal prosecution. (*People v. American Contractors Indemnity Co.*, *supra*, 33 Cal.4th at p. 657; see *Safety National*, *supra*, 62 Cal.4th at p. 709.) As discussed, because of that independence, while a *Humphrey* violation may affect the validity of the state's detention of a criminal defendant, the *North River* court held any noncompliance with *In re Humphrey* does not impair the trial court's jurisdiction over the collateral bail proceedings and render void, or even voidable, the surety's bail contract. (*North River*, *supra*, 48 Cal.App.5th at p. 235.)

We agree. A claimed violation of Carreno's rights in setting bail does not permit US Fire to void the bond—a contract between it and the state. Even if the trial court failed to state its reasons for the bail amount or failed to consider relevant factors, it fundamentally had jurisdiction over the criminal case and

10

Carreno, so the court's bail order was not void.  At most, the bail order was voidable by Carreno had he chosen to challenge it by writ petition or otherwise.[3]

## DISPOSITION

The order denying the motion to set aside is affirmed.  The People are to recover their costs on appeal.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.

---

[3]     US Fire's related argument it would be unconscionable to enforce the bail contract also improperly focuses on the bail setting process, rather than the bail contract itself, which has none of the elements of procedural and substantive unfairness required to invalidate an agreement as unconscionable.